UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>DANIEL YOUNGBLOOD,<br><br>　　　　　Defendant. | Case No: CR 09-0170 SBA<br><br>**ORDER DENYING APPEAL OF MAGISTRATE JUDGE'S PRETRIAL RELEASE ORDER**<br><br>[Docket 10] |

　　　The parties are presently before the Court on the United State's Appeal of the Magistrate's Pretrial Release Order.  Having read and considered the papers filed in connection with the motion, and being fully informed, the Court considers the matter suitable for resolution without a hearing. The Court hereby DENIES the Appeal and affirms Magistrate Judge Wayne D. Brazil's ("the Magistrate") pretrial release order of March 3, 2009.

**I.　　BACKGROUND**

　　　Defendant Daniel Youngblood, who just turned 23 years of age, is accused of committing a bank robbery on or about November 20, 2008.  The "bank" in actuality is a customer service counter located within the Safeway supermarket in Fremont, California.  According to the information presented, the Defendant, wearing a wig and a fake mustache, approached the teller and handed him/her a note to follow his instructions and verbally instructed the teller to give him money.  No weapon was used or brandished nor were any express or implied threats of harm made during the incident.  The Defendant allegedly left with $1,088 in cash and was apprehended 30 minutes later.

　　　Defendant was charged in state court with unarmed bank robbery.  He was arrested without incident and later released on bail.  Since his release, Defendant has attended all of his state court hearings.  Defendant remained out of state custody until he was arrested on February 25, 2008,

again without incident, this time by six federal agents for the same robbery. The arrest was based on a one-count federal criminal indictment, filed February 18, 2009, charging the Defendant with a violation of 18 U.S.C. § 2113(a). Defendant has remained in federal custody since then.

On March 3, 2009, the Magistrate conducted a detention hearing. The pretrial services report expresses some concern regarding his ability to make his court appearances consistently in prior matters, but did opine that such concerns could be addressed through appropriate sureties and conditions imposed upon his release. Pretrial services did not conclude that his release would pose any danger to the community. The Defendant's mother and fiancé agreed to sign a $200,000 bond and the Magistrate released the Defendant to the custody of a halfway house. Among other conditions, the Defendant may not leave the halfway absent permission from his Pretrial Services Officer. The Government now appeals that ruling, which this Court reviews de novo. United States v. Koenig, 912 F.2d 1190, 1191 (9th Cir. 1990).[1]

## II. DISCUSSION

### A. LEGAL STANDARD

The Bail Reform Act, 18 U.S.C. § 3142, mandates the release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(c)(1)(B); United States v. Motamedi, 767 F.2d 1403, 1405 (9th Cir. 1985). Thus, for a defendant to be detained, the Government must either establish (a) by clear and convincing evidence that the defendant poses a danger to others or (b) by a preponderance of evidence that the defendant poses a flight risk. United States v. Gebro, 948 F.2d1118, 1120 (9th Cir. 1991); Motamedi, 767 F.2d at 1406; see also 18 U.S.C. § 3142(f)(2).

"Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor." United States v. Robinson, 2007 WL

---

[1] In its reply brief, the Government improperly presents a number of new arguments and evidence that were omitted from its opening brief. Those arguments are not properly before the Court and will not be considered. See Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("[a] court need not consider arguments raised for the first time in a reply brief."). Even if they were, the ruling on this appeal would be the same.

- 2 -

1520967 at *2 (N.D. Cal. 2007) (Armstrong, J.)  However, where there is probable cause to believe that a defendant committed a Title 21 offense for which the penalty is a term of imprisonment of ten years or more, there is a rebuttable presumption that a defendant is both a flight risk and a danger to the community. 18 U.S.C. § 3142(e).  Once the presumption is triggered, the defendant has the burden of producing or proffering evidence to rebut the presumption.  United States v. Hare, 873 F.2d 796, 798 (5th Cir. 1989).  That burden is not onerous, however, as the defendant need only produce "some credible evidence forming a basis for his contention that he will appear and not pose a threat to the community in order to rebut the presumption."  United States v. Chen, 825 F. Supp. 1205, 1207 (N.D. Cal. 1992) (citations and internal quotations omitted).  In addition, irrespective of the presumption, the burden of persuasion always remains with the Government.  See United States v. Hir, 517 F.3d 1081, 1086 (9th Cir. 2008).

      Bank robbery under section 2113(a) carries a maximum sentence of ten years, and as such, the presumption applies.  18 U.S.C. § 3142(e).  Therefore, the Court must determine whether there are conditions of release that will reasonably assure the defendant's appearance and the safety of any other person and the community.  Id. § 3142(g).  That balancing test requires that the Court consider four factors: (1) "the nature and circumstances of the offense charged, including whether" it involves a controlled substance; (2) "the weight of the evidence against the person;" (3) "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;" and whether they were on probation, parole, or any other type of release; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Id.

    **B.**    **SECTION 3142(G) FACTORS**

        **1.**    **Nature and Circumstances of Offense**

The Government argues that the nature and circumstances surrounding the robbery justify the Defendant's detention.  Attempting to portray the Defendant as violent, the Government points out that he wore a wig during the robbery and "threatened the tellers by implying that he would

hurt them if they did not comply with his orders." (Reply at 2, see also Mot. at 2.) That claim is unsupported.[2] The information presented shows that the Defendant simply handed the tellers a note directing them to follow his instructions and then told them to give him money, which they did. There is no evidence that any gun or weapon was displayed, used or threatened during the incident, nor is there any evidence that the perpetrator in any way acted aggressively or violently. See Robinson, 2007 WL at *3 (noting that use of an unloaded firearm during a bank robbery "did not actually present the danger he appeared to present"). As for the Defendant's disguise (which included a fake mustache that appears to have fallen off during the robbery), the photos belatedly submitted by the Government with its reply do not convey that he appeared menacing as suggested by the Government.

### 2. Weight of the Evidence

The next factor for the Court to consider is the weight of the evidence, which is considered the "least important" of the section 3142(g) factors. See Motamedi, 767 F.2d at 1408. Here, the Government contends that two eyewitnesses have identified the Defendant as the person who committed the robbery and that his image was captured on a surveillance camera. (Mot. at 3.) The Government offers no evidence to support these assertions. In addition, it appears that at least one of the two eyewitnesses identified by the Government, in fact, stated that the Defendant was *not* the person who committed the robbery. (Opp. at 6.) At best, this factor is neutral.

### 3. Personal History of the Defendant

The Government expends considerable effort to highlight the Defendant's prior criminal history. (Mot. at 4-5.) From 2004 through 2008 he was arrested numerous times and suffered convictions for possession/sale of cocaine base, reckless driving and theft. (Mot. at 4.) In addition, the Defendant apparently has had his driver's license suspended and had an "unstable" employment and residential history. (Id. at 4.) Though the Defendant's prior legal problems

---

[2] The Government claims that the Defendant ordered the tellers to "get on the ground" and that "no one will get hurt." (Mot. at 3.) No evidence is presented to support these alleged statements. In addition, this allegation is undermined by the fact that the supermarket cashier, who supposedly was the third eyewitness, was not even aware that a robbery was in progress. (Opp. at 6.)

1  arguably weigh in favor of detention, the Government completely ignores the other factors
2  germane to the Defendant's history and characteristics, all of which militate in his favor.
3        The Defendant has significant family ties to the Bay Area.  He was born and raised in this
4  area and graduated from San Lorenzo High School.  The Defendant has strong ties to his mother,
5  fiancé and his two minor children, all of whom are living here.  In addition, his fiancé is expecting
6  another child.  Though his employment has not been particularly stable, he was for the most part,
7  gainfully employed (i.e., Costco, Food Maxx, U-Haul, JB Electrical) through November 2008.
8  Upon losing his job, he applied for and recently has been accepted in an apprenticeship program
9  through the Northern California Laborer's Apprentice Training Committee.  In addition, the
10 pretrial services report confirms that there is no indication of physical or mental problems nor does
11 he have any drug or alcohol abuse issues.  And while he has some failures to appear in connection
12 with his prior citations, he has attended all of his court appearances in connection with the state
13 robbery charges.  On balance, the court finds that the evidence of the Defendant's history and
14 characteristics favor release.

15       **4.**     **Nature and Seriousness of Danger**
16       The final section 3142(g) factors requires the court to examine the nature and seriousness of
17 the danger to any person or the community that would be posed by the person's release. Pretrial
18 services has indicated that it does not believe that the Defendant's pretrial release will endanger the
19 community.  Nevertheless, the Government intimates that he a danger to the community, as
20 evidenced by the seriousness of the offense, his criminal history and his lack of employment.
21 (Mot. at 4.)  The Court is unpersuaded.  While it is clear that the Defendant has made some poor
22 choices, there is no evidence presented that he is a violent or aggressive person.  No weapon or
23 force was used during the robbery nor were there any threats made.

24       **5.**     **Flight Risk**
25       Though not entirely clear, the Government appears to argue that Defendant's body
26 language observed at the time of his arrest by federal agents somehow shows that he is flight risk.
27 (Mot. at 4.)  While it is undisputed that the Defendant was taken into custody without incident, the
28 Government claims that his "body started to tense up" as he was being placed under arrest.

(Wimbley Decl. ¶ 2.)  Given that the Defendant was confronted by *six* federal agents at the time of his arrest, his "tense" reaction is entirely understandable.  Equally unavailing is the entirely speculative claim by Agent Wimbley that *he* had personal knowledge that "*Officer John Muschi* believed that the *defendant* was thinking about fleeing."  (Id.)  One officer's rank speculation about what *another* officer believed in turn about what *another* person was thinking - is not probative of a likelihood to flee.

The Government also contends that the sureties required by the Magistrate are insufficient because both the mother and fiancé are poor, have criminal histories and are not able to control the Defendant.  (Mot. at 5-6.)  The Government's argument misses the mark.  The pretrial services report indicates that the mother, Robin Bradley, is a homeowner who is gainfully employed.  (See also Silbert Decl. ¶ 4.)  Her prior criminal history consists of a petty theft conviction from over twenty years ago.  (Id.)  Her more recent conviction for hit and run resulted from accidently hitting a parked car at night, for which she successfully completed probation.  (Id.)  As to Claudia Recinos, Defendant's fiancé, she also has been steadily employed until recently as a result of complications with her pregnancy.  (Id. ¶ 5.)  She anticipates resuming work after giving birth. (Id.)

As discussed above, the Defendant has strong community ties.  He was born and reared in the Bay Area and the persons most significant in his life, i.e., his mother, fiancé and children, all live here.  Both times he was arrested for the robbery, he was taken into custody without incident. Until his arrest in this case, he was out on bail in the state case and attended all of his court appearances.  As in Robertson, "the Government has provided nothing beyond a generalized argument that theoretically applies to all defendants released before trial to argue that the Defendant is a flight risk. This factor weighs in favor of release." Robertson, 2007 WL at *4.

//
//
//
//

**CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT the Government's Appeal of the Magistrate's Pretrial Release Order [Docket 10] is DENIED.

Dated:  March 23, 2009

_____
Hon. Saundra Brown Armstrong
United States District Judge